# 16CV 5184

RECEIVED
JUDGE KAPLAN'S CHAMBERS
JUN 29 2016

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Mohammad Salameh

V.

UNITED STATES OF AMERICA

\*     **CRIMINAL ACTION**

\*     **CASE NO. S9-93-cr-180(LAK)**

\*

## PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255(F)(3) <u>TO DISMISS COUNTS NINE AND TEN</u>

**TO THE HONORABLE LEWIS A. KAPLAN , JUDGE, UNITED STATES DISTRICT COURT, SOURTHERN DISTRICT OF NEW YORK:**

    **AND NOW COMES,** the petitioner, Mohammad Salameh hereinafter the ("petitioner") proceeding in a pro-se capacity, unable to lean on the understanding of counsel, who is now respectfully moving before this Honorable Court his section 2255(f)(3) to dismiss Counts 9 and 10 in light of the Supreme Court's recent decision in <u>*Johnson v. United States*</u>, 135 S. Ct. 2551 (2015), and in support thereof does state as follows:

## INTRODUCTION

    After being indictment by a grand jury in the southern district of New York on March 1993 , for the crimes of (Title 18, United States Code, Sections 111; 1952; 34 и 2, 1546 (a) 33; 371; 844(d); 844(f); 844(i); 924(c); and Section 2.)

SDNY PRO SE OFFICE
RECEIVED
2016 JUN 30 PM 12: 43

The petitioner was charged with the use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c) Counts Nine and Ten. Specifically, the counts allege that the underlying "crime of violence" for the §924(c) offense is *"Forcible Assault of Federal Officers"* in violation of 18 U.S.C. §111(a); and *"Conspiracy to Damage and Destroy Buildings"* in violation of 18 U.S.C. §371 set out in Counts Nine and Ten. The charge in Counts Nine and Ten must fail, however, since the government cannot prove those offenses because a *"Forcible Assault of Federal Officers or Conspiracy to Damage and Destroy Buildings" categorically fails to qualify as a "crime of violence".*

Accordingly, the petitioner's jury verdict on those counts were predicated upon a misconception of the law "as it presently stands," and petitioner should only be sentence now in accordance with the Supreme Courts recently declared-interpretation, which is to say only on counts One, Two, Three, Four, Five, Six, Seven, Eight and not on Counts Nine and Ten."

As explained herein, the Supreme Court's recent decision in *Johnson* renders the government's task unattainable regarding Counts Nine and Ten. Under the current status of the law as it now has been explicated by the court, a Forcible Assault of a Federal Officer as prescribed by 18 U.S.C. §111(a) categorically fails to constitute a crime of violence under §924(c)(3)(a) (the force clause) because it

2

can be accomplished by placing one in fear of future injury to his person or property, which does not require violent physical force.

Additionally, in light of *Johnson*, the *"residual clause" within §924(c)(3)(b), is unconstitutionally vague and cannot sustain a conviction.*

Therefore, the conviction of Counts Nine and Ten" of the information must be overturned and dismissed and the sentence must be vacated.

If this court were to dismiss those said counts from the indictment insofar it would have indeed got it right see: *United States v. Lattanaphom*, 2016 U.S. Dist. LEXIS 12368 (9th Cir. 2016); *United States v. Edmundson*, 2015 U.S. Dist. LEXIS 171007 (4th Cir. 2015); *United States v. Ezell*, 2015 U.S. Dist. LEXIS 109814 (3rd Cir. 2015) (Section 924(c)'s mandatory sentencing provisions are *"coming under increasing scrutiny, and rightly so")*.

As the *Ezell* court has stated: the petitioner is serving a sentence that far exceeds the average sentence faced by those who commit even more serious crimes of violence: In Fiscal Year 2014, for example, the average sentence in federal court for ***Murder*** was just **under 23 years-a stark contrast to the 140 plus years that the petitioner is serving.**

Also see: *United States v. Holloway*, 68 F. Supp. 3d 310, 315 (E.D.N.Y. 2014). This Honorable Court does not remain powerless under the law to ensure that justice is done in the petitioner's case.

Therefore, it is petitioner's prayer that this Honorable Court will dismiss those counts; for this Court has such discretion; and such a sentence is sufficient to meet the sentencing goals of 18 U.S.C. §3553(a)(6), which provides in relevant part:

That a sentencing Court should consider *"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct..."*

**STATUTES INVOLVED:**

This motion primarily concerns the following two federal statutes:

**a) 18 U.S.C. §111(a), in pertinent part 111 provides:**

Whoever, forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person...while engaged in or on account of the performance of official duties; or...

**b) 18 U.S.C. §924(c), in pertinent part, 924(c)(1)(A) provides:**

...any person who, during and in relation to a crime of violence... for which the person may be prosecuted in a Court of the United States, uses or carries a firearm, shall, or who in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence...

(i) be sentenced to a term of imprisonment of not less than 5 years;
(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

**Under §924(c)(3), "crime of violence" is defined as follows:**

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and

4

(a) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

## ARGUMENT

The Court must dismiss Counts Nine and Ten, alleging a §924(c) violation, because the predicate offense as defined by §111(a) does not qualify as a "crime of violence" as a matter of law. As noted in the prior section, the relevant portion of §924(c) defining a "crime of violence" has two clauses.

**The first clause §924(c)(3)(A) is commonly referred to as the "force" clause.**

**The other §924(c)(3)(B) is commonly referred to as the "residual" clause.**

As discussed in the following sections of the Argument, Forcible Assault of a Federal Officer under §111(a) categorically fails to qualify as a "crime of violence" under §924(c)(3)s force since, pursuant to §111(a), the offense can be committed by putting one in fear of future injury to his person or property and not violent physical force. Further §924(c)(3)s residual clause,

Post *Johnson* is constitutionally incapable of supporting a conviction due to vagueness. Therefore, Counts Nine and Ten of the information must be dismissed.

# I. FORCIBLE ASSAULT OF A FEDERAL OFFICER UNDER §111(a) DOES NOT QUALIFY AS A "CRIME OF VIOLENCE" UNDER THE FORCE CLAUSE OF §924(c)(3) BECAUSE IT CAN BE VIOLATED WITHOUT THE USE, ATTEMPTED USE, OR THREATENED USE OF VIOLENT PHYSICAL FORCE.

To determine whether a predicate offense qualifies as a "crime of violence" under §924(c), courts use the categorical approach. See *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Royal*, 731 F. 3d 1105, 1107-08 (10th Cir. 2009); *United States v. Acosta*, 470 F. 3d 132, 135 (2d Cir. 2006).

This approach requires that courts "look only to the statutory definitions i.e., the elements of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence". *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Royal*, 731 F. 3d at 341-42; *Serafin*, 562 F. 3d at 1107; *Acosta*, 470 F. 3d at 135; see §924(c)(3)(A).

Furthermore, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute "including the most innocent conduct" matches or is narrower that the "crime of violence" definition.

*United States v. Torres-Miguel*, 701 F. 3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

Therefore, *post-Descamps*, for any offense – including Forcible Assault of a Federal Officer under §111(a) to qualify as a "crime of violence" under §924(c)(3)s force clause, the offense under consideration must have an element of "physical force." And "physical force" means "violent force" that is "strong physical force," which is capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).

**Forcible Assault of a Federal Officer, as defined in §111(a)**, does not meet this requirement because it can be accomplished by putting someone in fear of future injury to his person or property, which does not require the use, attempted use, or threatened use of "violent force."

The act of placing another in fear of physical injury constitutes, at most, a threat of physical injury to another, which plainly does not require the use or threatened use of "violent force" against another.

The Fourth Circuit's decision in *Torres-Miguel*, 701 F. 3d 165, is directly on point. Indeed, in that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "serious bodily injury or death," does not necessarily require the use of physical force, let alone "violent force." In *Torres-Miguel*, the underlying offense at issue was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "will result in death or

great bodily injury to another."701 F. 3d at 167 (citing Cal. Penal Code §422(a)) (emphasis added). The specific question in the case was whether the statute defining the prior offense included an element equating to a threat of "violent force" under the force clause of USSG §2L1.2 a clause that is identical in all relevant respects to the §924(c)(3)(A) force clause. Id. Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the force clause. Id. At 168-69. The Court held that "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." Id. at 168. The Court proclaimed in strong language that "of course, a crime may result in death or serious injury without involving use of physical force." Id. (emphasis added).

The Court, relying on decisions from various Circuits, reasoned that there are many ways in which physical injury even death can result without the use of "violent force." Id. At 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like §422(a) by threatening to poison another, which involves no use or threatened use of force." *Torres-Miguel*, 701 F. 3d at 168-69, citing *United States v. Cruz-Rodriguez*, 625 F. 3d 274, 276 (5th Cir. 2010). In

reaching its decision, the *Torres-Miguel* panel also relied on the Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F. 3d 188, 194 (2d Cir. 2003).

At issue in that case was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause. The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury." *Chrzanoski*, 327 F. 3d at 193. Nonetheless, the "Second Circuit held that [the statute] does not constitute a crime of violence...because there is a difference between causation of an injury, which is all that the Connecticut statute required, and an injury's causation by the use of physical force." *Torres-Miguel*, 701 F. 3d at 169 (*citing Chrzanoski*, 327 F. 3d at 195.

The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink. Id. at 195-56.

For even further support, in *Torres-Miguel*, the Fourth Circuit in *Torres-Miguel*, 701 F. 3d at 169, embraced the Tenth Circuit's decision in United States v. *Perez-Vargas*, 414 F. 3d 1282, 1287 (10th Cir. 2005).

In that case, the Tenth Circuit explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury, imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. §2L1.2. "*Torres-Miguel*, 701 F. 3d at 169, citing *Perez-Vargas*, 414 F. 3d. at 1287 (internal quotation marks omitted). The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force…intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Perez-Vargas*, 414 F. 3d at 1286.

Therefore, Torres-Miguel and the other authority discussed, supra, command the view that a Forcible Assault of a Federal Officer, which can be accomplished by putting another in fear of physical injury, does not require "violent force." If the threat of mere "physical injury" does not. Indeed, a person can place another in fear of injury by threatening to poison the person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car,

to lock the person up in the car on a hot day, to lock that person at an abandoned site without food or shelter some of the very examples that the Fourth Circuit in *Torres-Miguel* as well as the other courts have held do not constitute "violent force," as discussed, supra.

Because "the full range of conduct" covered by the Forcible Assault of a Federal Officer statute does not Forcible Assault of a Federal Officer can also be accomplished by placing someone in fear of injury to his property.

This also does not require "violent force" against the property because this can be accomplished by many ways short of strong physical force threatening to throw paint on someone's house, to spill water on one's will, or to spray paint someone's car, requires "violent force," the statute simply cannot qualify as a "crime of violence" under the in force clause of §924(c)(3).

*Torres-Miguel*, 701 F. 3d at 171. Nor does it matter that the possibility of violating the Forcible Assault of a Federal Officer statute absent the use of violent physical force is slim.

Since the possibility exists, this Court cannot legitimately find that Forcible Assault of a Federal Officer is a "crime of violence." Indeed, in *Torres-Miguel*, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other nonviolent force, yet the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." Id. At 171.

The Court should find the same here with respect to the Forcible Assault of a Federal Officer statute, which leaves open the same possibility. The prior conviction against the petitioner on these offenses cannot stand, and the petitioner's sentence must be vacated on counts "Nine and Ten."

## II. THE RESIDUAL CLAUSE OF §924(c)(3) IS UNCONSTITUTIONALLY VAGUE AND THUS CANNOT SUPPORT A CONVICTION UNDER THE STATUTE.

Since Forcible Assault of a Federal Officer fails to qualify as a "crime of violence" under §924(c)(3)'s force clause, the remaining question in whether, the offense can qualify as a "crime of violence" under the residual clause of §924(c)(3). As *Johnson* **makes clear, it cannot.** In *Johnson*, the Supreme Court determined that the "residual clause" of the ACCA is unconstitutionally vague. The holding in *Johnson* applies to the parallel "crime of violence" definition in §924(c)(3)'s residual clause, and the section suffers equally from the same flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Using §924(c)(3)(B) to categorize a predicate conviction as a "crime of violence" therefore violates due process.

### A. Johnson Expressly Overruled the "Ordinary Case" Approach to Determining Whether a Felony Qualifies as a "Crime of Violence."

In Johnson, the Supreme Court held that the ACCA residual clause is unconstitutionally vague because the process by which courts categorize prior

convictions as violent felonies is too "wide-ranging" and "indeterminate." 135 S.
Ct. at 2557. As a result, the ACCA "both denies fair notice to defendants and
invites arbitrary enforcement by judges." Id. *Johnson* concluded after an extensive
discussion that the Supreme Court's four previous attempts to articulate a workable
test to determine whether a felony falls under the ACCA residual clause had failed.
Id. at 2558-59.

The Court began its analysis by explaining that, under *Taylor v. United
States*, 495 U.S. 575 (1990), the ACCA requires the categorical approach to
determine whether a particular statute qualifies as violent felony. Id. at 2557.
Courts must assess whether a crime qualifies as a violent felony in terms of how
the law defines the offense and not in terms of how an individual might have
committed it on a particular occasion." Id., quoting *Begay v. United States*, 553
U.S. 137, 141 (2008).

The Court further clarified that the residual clause "requires a court to
picture the kind of conduct that the crime involves in the ordinary case, and to
judge whether that abstraction presents a serious risk of potential injury." Id.
(citation omitted). The Court linked the "ordinary case" framework to *James v.
United States*, 550 U.S. 192 (2007), in which it held "[w]e do not view that
approach as requiring that every conceivable factual offense covered by a statute

must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony…

The Court reaffirmed the vitality of the categorical approach, despite the government's and a dissenting justice's invitation to abandon it in residual clause cases. Id. at 2557, 2562.

Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." Id. at 208 (citations omitted).

"As long as the offense is of a type that, by its nature, presents a serious risk of injury to another, it satisfies the requirements of [the ACCA's] residual clause." Id. At 209 (emphasis added, brackets supplied). *Johnson* concluded that the process of determining what is embodied in the "ordinary case" rather than "real-world facts" is fatally flawed, rendering the ACCA unconstitutionally vague. "Grave uncertainty" surrounds the method of "judicial assessment of risk" associated with the way to choose between…competing accounts of what ordinary…involves." Id. At 2558 (emphasis added).

The *Johnson* Court considered and rejected different ways that a court might envision the hypothetical "ordinary case" since the statute offers no guidance. Specifically, the Court explained that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all equally unreliable in

determining the ordinary case." Id... at 2557 (quoting *United States v. Mayer*, 560 F. 3d 948, 952 (9th Cir. 2009) (*Kozinski*, C. J., dissenting from the denial of rehearing en banc)). Although earlier ACCA cases tried to rely on statistical analysis and "common sense," *Johnson* concluded that these methods "failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition." Id. at 2558-59, citing and discussing *Chambers v. United States*, 555 U.S. 122 (2009); and *Sykes v. United States*, 564 U.S. 1 (2011). This flaw alone is enough the residual clause's unconstitutional vagueness.

The Court, however, explained that a closely related flaw exacerbates the problem, noting that the residual clause lacks a meaningful gauge for determining when the quantum of risk under the "ordinary case" of a particular statute is enough to constitute a "serious potential risk of physical injury." Id. at 2558. Although the level of risk required under the residual clause must be similar to the enumerated offenses (burglary, arson, extortion, or crimes involving use of explosive), Johnson rejected the notion that a simple comparison of a particular felony's "ordinary sense" to the risk posed by the specific enumerated offenses cures the constitutional problem. Id.

The enumerated offenses failed to save the ACCA residual clause because comparing felonies to enumerated offenses requires a similar resort to a "judicially

imagined abstraction." Id. Before courts may even start the comparison, they must first determine what the "ordinary" enumerated crime entails.

But the "ordinary" enumerated crimes, *Johnson* emphasized, like any other crime, "are far from clear in respect to the degree of risk each poses." Id., quoting *Begay v. United States*, 553 U.S. 137, 143 (2008).

Any attempt to figure out the "ordinary" enumerated offense requires just as much guesswork as figuring out the "ordinary" predicate offense. The Court held that the result of "ordinary case" analysis is that the residual clause "produces more unpredictability and arbitrariness than Due Process Clause tolerates." Id.

Thus, *Johnson* not only invalidated the ACCA residual clause, but it invalidated the "ordinary clause" analysis and statutory provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

**B. Johnson Means That §924(C)(3)(B) Is Unconstitutionally Vague. The Statutory Phrase At Issue In This Case Is Essentially The Same As The ACCA Residual Clause.**

To be sure, 18 USC §924(c)(3)(B)(ii) and 18 USC §924(c)(3)(B) are not identical. But the differences have no impact on the constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in

16

§924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on the *Johnson* decision.

The Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies Court regularly compare the similarities between the residual clause in the ACCA to the clause at issue here, (although the comparison tend to specifically address 18 USC §16(b), that statute is identical to §924(c)(3)(B).) See, e.g., *Chambers*, 555 U.S. at 133, n.2 (2009) (citing circuit splits on §16(b) in the context of a residual clause case because §16(b) "closely resembles ACCA's residual clause") (Alito, J. concurring). See *United States v. Ayala*, 601 F. 3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under §924 (c) (3) (B)); *United States v. Aragon*, 983 F. 2d 1306, 1314 (4th Cir. 1993) (same). See also *United States v. Keelan*, 786 F. 3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA otherwise clause and §16(b) "analogous"); *Robert v. Holder*, 745 F. 3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and §16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under §16(b)").

In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B)(ii).

Section §924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

See *Jimenez-Gonzales v. Mukasey*, 548 F. 3d 557, 562 (7th Cir. 2008) (noting that, "despite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and §16(b) "perfectly mirrored" each other). See also *United States v. Gomez-Leon*, 545 F. 3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F. 3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F. 3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F. 2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and that interpreting U.S.S.G. §4.1.1, which uses the ACCA language, "is controlled by" a decision that interprets §16(b) the risk, and that inquiry is the same under both ACCA and §924(c). Both statutes require courts first to picture the "ordinary case" embodied by a felony, and then decide if it qualifies as a crime of violence by assessing the risk posed by the "ordinary case."

Relying on *James*, the Fourth Circuit has squarely held that the "ordinary case" analysis applies when construing 18 U.S.C. §16(b). *United States v. Avila*, 770 F. 3d 1100, 1107 (4th Cir. 2014).

The Fourth Circuit stated: [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as

18

a crime of violence. It is sufficient if the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury of another. *James*, 550 U.S. at 127 S. Ct. 1586.

As long as an offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. §16(b). Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and §924(c), such as "substantial," "grave," and "unreasonable." And the Supreme Court in *Johnson* said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct."

By contrast, the ACCA's residual clause, and §924(c)(3) too, require it to be applied to "an idealized ordinary case of the crime," an "abstract inquiry" that "offers significantly less predictability." *Johnson*, 135 S. Ct. at 2558.

Both the ACCA and §924(c)(3)(B) require courts to discern what the ordinary case is relative to a particular crime by examining the elements using a categorical approach. See, e.g., *United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F. 3d 447, 453 (6th Cir. 2011); *United States*

*v. Serafin*, 562 F. 3d 1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F. 3d 929, 932 (8th Cir. 2008); *United States v. Acosta*, 470 F. 3d 132, 134 (2d Cir. 2006). *United States v. Amparo*, 68 F. 3d 1222, 1225 (9th Cir. 1995).

Courts may not consider the factual means of committing any given offense, but must be consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, §924(c)(3)(B), or §16(b) is at issue.

*Avila* controls here because §16(b) and §924(c)(3)(B) are identical. Indeed, in litigating *Johnson*, the government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and here pose the same problem.

In noting that the definitions of a crime of violence in both §924(c)(3)(B) and §16(b) are identical, the Solicitor General stated: Although Section 16 refers to the risk that force will be used rather than injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters. *Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-23).

The Solicitor General was right. Section §924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This Court should hold the

government to that concession. Section §924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is.

*Avila*, 770 F. 3d at 1107; Ayala, 601 F. 3d at 267; *Van Don Nguyen*, 571 F. 3d. at 530; Sanchez-Garcia, 501 F. 3d at 1213. Since this is the identical analytical step that brought down the ACCA residual clause, §924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed other courts likewise require the ordinary case analysis when the statutory language of §16(b) (and thus §924(c)(3)(B)) is at issue. See, e.g., *Keelan*, 786 F. 3d at 871 (relied on by the government in its Rule 28(j) letter and following the "uniform rule" of "all other circuits to have examined the issue" and adopting "ordinary case" analysis for §16 (b)); *United States v. Ramos Medina*, 706 F. 3d 932, 938 (9th Cir. 2012) (citing James as the source of the "ordinary case" analysis required by §16(b)); *Van Don Nguyen v. Holder*, 571 F. 3d 524, 530 (6th Cir. 2009) (considering §16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); *United States v. Sanchez-Garcia*, 501 F. 3d 1208, 1213 (10th Cir. 2007) (same).

In *Johnson* As a consequence, the residual clause cannot be used to bring a Forcible Assault of a Federal Officer within the ambit of "crimes of violence" which can support a conviction under §924(c).

## CONCLUSION

Since Forcible Assault of a Federal Officer under §111(a) categorically fails to qualify as a "crime of violence" under §924(c)'s "force clause," and §924(c)'s residual clause is unconstitutionally vague, no legal basis exists for a §924(c), notwithstanding the petitioner's conviction in this matter. Johnson was decided on June 26, 2015. This motion therefore is timely in accordance with the standards set forth in *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 2001).

For the foregoing reasons, the petitioner requests that this Court grant the following relief:
a) grant the petitioner's Motion and dismiss Counts Nine and Ten, the alleged violation of 18 U.S.C. §924(c) in the information;
b) Vacate the conviction and the sentence;
c) Enter a sentence solely upon all other counts; and not on Counts Nine and Ten
d) Grant all such further relief as the court may deem appropriate to the petitioner.

Dated this 21st day of June , 2016

Respectfully Submitted,

Mohammad Salameh

MS'd

#34338-054

ADX USP-Max.

P.O. Box 8500

Florence, CO 81226

22

# CERTIFICATE OF DEPOSIT IN THE PRISON MAILING SYSTEM

I, Mohammad Salameh, certify that this MOTION PURSUANT TO 28 U.S.C. §2255 (f)(3) TO VACATE CONVICTION AND SENTENCE ON COUNTS NINE AND TEN was placed in the prison mailing system on June 22, 2016, with postage for first class mail, addressed to:

THE HONORABLE LEWIS A. KAPLAN
United States District Court
For The Southern District of New York
U.S. Courthouse
Foley Square
New York, NY 10007-1581

Mohammad Salameh, Pro se
Reg. # 34338-054
ADX U.S. Penitentiary-Max,
P.O. Box 8500
Florence, CO 81226

pro se

cc. file

SDNY RECEIVED PRO SE OFFICE 2016 JUN 30 PM 12:43

RECEIVED
JUN 29 2016
JUDGE KAPLAN'S CHAMBERS

Name: Mahammad Salameh
Reg No: 34338-054
U.S. Penitentiary MAX
P.O. Box 8500
Florence, CO. 81226-8500







RECEIVED
JUN 2 8 2016
JUDGE KAPLAN'S CHAMBERS

To: The Honorable Lewis A. Kaplan
United States District Court
For The Southern District Of New York
U.S. Courthouse
Foley Squere
New York, NY 10007-1581

Special Mail

June 22, 2016

2016 JUN 30 PM 12:43
SDNY PRO SE OFFICE
RECEIVED



Administrative Maximum
P.O. Box 8500
Florence, CO 81226-8500

The enclosed letter was processed through special
mailing procedures for forwarding to you. This letter
has been neither opened nor inspected. If the writer
raises a question or problem over which this facility
has jurisdiction, you may wish to return the material
for further information or clarification. If the writer
encloses correspondence for forwarding to another
addressee, please return the enclosure to the above
address.

JUN 2 2 2016